## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE JAMES MABLE, | : | |
| **Petitioner** | : | |
| | : | No. 1:19-cv-1392 |
| v. | : | |
| | : | (Judge Kane) |
| MARK C. GARMAN, et al., | : | |
| **Respondents** | : | |

## MEMORANDUM

On August 23, 2019, pro se Petitioner Antoine James Mable ("Petitioner"), who is presently confined at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Following two (2) Orders to show cause (Doc. Nos. 11, 12), Respondents filed a response to Petitioner's § 2254 petition on December 26, 2019 (Doc. No. 15).  In an Order dated January 30, 2020, the Court directed Respondents to expand the record by filing copies of: (1) any post-sentence motions filed by Petitioner and the trial court's rulings thereon; (2) the parties' appellate briefs and statements pursuant to Rule 1925(a) and (b); and (3) any trial court opinions pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure.  (Doc. No. 17.)   The Court also granted Petitioner an extension of time to file his traverse.  (Id.)  On February 13, 2020, Respondents expanded the record as directed by the Court.  (Doc. No. 20.)  To date, Petitioner has filed neither a traverse nor a motion seeking another extension of time to do so.  Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2254 petition is ripe for disposition.

# I. BACKGROUND

## A. Procedural History

Petitioner is serving an aggregate term of a minimum of thirty (30) months and a

maximum of sixty (60) months' incarceration after he was convicted by a jury of conspiracy to

promote prostitution, promoting prostitution by means of encouragement, and promoting

prostitution by means of transportation. See Commonwealth v. Mable, Docket No. CP-45-CR-

0000723-2015 (Monroe C.C.P. May 23, 2016). The Superior Court of Pennsylvania set forth the

background of the case as follows:

> The trial court set forth a summary of the facts adduced at trial in its Pa. R.A.P.
> 1925(a) opinion. . . . Briefly, the Commonwealth's evidence demonstrated that
> [Petitioner] and his codefendant coaxed the victim to travel from Scranton to
> Monroe County, promising her protection in exchange for a share of her earnings
> as a prostitute. The codefendant then transported the victim from Scranton to
> Monroe County, picking up [Petitioner] along the way. When the trio arrived at a
> trailer home in Monroe County, the victim began to express reservations about the
> arrangement. In response, [Petitioner] and the codefendant abused the victim, and
> detained her against her will overnight. The Commonwealth presented expert
> testimony that [Petitioner] and his codefendant were members of a gang known for
> engaging in human trafficking for the purposes of prostitution.
>
> The Commonwealth charged [Petitioner] with rape, 18 Pa. C.S. § 3121; conspiracy
> (promoting prostitution), 18 Pa. C.S. § 903; involuntary deviate sexual intercourse,
> 18 Pa. C.S. § 3121; aggravated indecent assault, 18 Pa. C.S. § 3125; promoting
> prostitution (encouragement), 18 Pa. C.S. § 5902(b)(3); unlawful restraint, 18 Pa.
> C.S. § 2902; indecent assault, 18 Pa. C.S. § 3126; and promoting prostitution
> (transportation), 18 Pa. C.S. § 5902(b)(6). On March 9, 2016, a jury convicted
> [Petitioner] of all of the prostitution-related offenses (conspiracy, encouraging
> prostitution, and transporting a prostitute), but "was hopelessly deadlocked on the
> remaining charges[,]" leading the trial court to declare a mistral with respect to the
> remaining counts.

Commonwealth v. Mable, No. 3211 EDA 2016, 2018 WL 653777, at *1 (Pa. Super. Ct. Feb. 1,

2018). On June 2, 2016, Petitioner filed a timely post-sentence motion, which the trial court

denied on September 19, 2016. See id.

Petitioner timely appealed to the Superior Court of Pennsylvania, raising the following claims for relief: (1) the Commonwealth should have been precluded from presenting expert testimony regarding gang affiliation and any activity and statements made by Petitioner regarding such affiliation; (2) the trial court erred by denying Petitioner's omnibus pretrial motion seeking, inter alia, to preclude the use of the term "victim" when referring to the complaining witness; and (3) Petitioner's convictions were contrary to the weight and sufficiency of the evidence because the complaining witness presented inconsistent testimony and there was insufficient evidence to establish that Petitioner was engaged in a conspiracy to promote prostitution. See Commonwealth v. Mable, No. 3211 EDA 2016, 2017 WL 4535671, at *1 (Pa. Super. Ct. Oct. 11, 2017). On October 11, 2017, the Superior Court of Pennsylvania noted that the trial court had "neither issued a Rule 1925(a) opinion, nor a statement in lieu thereof." See id. The Superior Court, therefore, remanded the case to the trial court to file a Rule 1925(a) opinion addressing the three (3) claims for relief set forth above. See id.

The trial court filed its Rule 1925(a) opinion on December 19, 2017. (Doc. No. 20-7 at 1-18.) The trial court rejected Petitioner's claims for relief, concluding that: (1) evidence of gang affiliation was more probative than prejudicial, its introduction did not violate Rule 404(b) of the Pennsylvania Rules of Evidence, and the state trooper who presented expert testimony on gags was properly qualified as an expert; (2) the use of the term "victim" is not objectionable in Pennsylvania; (3) the evidence was sufficient to convict Petitioner of both charges of promoting prostitution as well as conspiracy to promote prostitution; and (4) Petitioner waived his claim regarding the weight of the evidence because he never raised such a claim in his post-sentence motion. (Id.) On February 1, 2018, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence for the reasons set forth by the trial court in its Rule 1925(a) statement.

See Mable, 2018 WL 653777, at *2. On August 8, 2018, the Supreme Court of Pennsylvania

denied Petitioner's petition for allowance of appeal. See Commonwealth v. Mable, 647 Pa. 569

(2018). Petitioner did not file a Post Conviction Relief Act ("PCRA") petition. He filed the

instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 13, 2019.

(Doc. No. 1.)

### B.      Petitioner's Habeas Claims

Petitioner did not use this Court's form for filing his § 2254 petition and, therefore, it is

difficult for the Court to discern the claims for relief that Petitioner is raising. The Court's

liberal reading of the § 2254 petition, however, reveals the following claims for relief:

1.      Petitioner's sentence is excessive and violates the Fifth Amendment's Double Jeopardy Clause;

2.      The trial court discriminated against Petitioner based upon his race by not declaring a complete mistrial and by revoking his bail;

3.      Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated when the Commonwealth constructively amended the indictment returned against him;

4.      Counsel rendered ineffective assistance by "abandoning" Petitioner, failing to investigate, failing to ensure that a psychological evaluation occurred, and failing to argue for a mistrial; and

5.      The evidence was insufficient to support Petitioner's convictions.

(Id.)[1]

---

[1] Petitioner's § 2254 petition references three (3) grounds for relief, as does Respondents' response. The Court's review of the § 2254 petition, however, leads to a conclusion that Petitioner raises several issues within each ground, and that some of his grounds for relief overlap. The Court, therefore, has discerned the five (5) grounds for relief set forth above from the § 2254 petition.

## II.     LEGAL STANDARD

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  See Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  See 28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

## III.    DISCUSSION

### A.    Timeliness of Petitioner's § 2254 Petition

Respondent argues that Petitioner's § 2254 petition is untimely filed pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").   Under 28 U.S.C. § 2244(d), a state prisoner is subject to a one-year statute of limitations for the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2254.  This statute provides that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28. U.S.C. § 2244(d).

Under this statute of limitation, a prisoner generally must file a federal habeas corpus petition within one year of the date his conviction became final.  See 28 U.S.C. § 2244(d)(1)(A). In the instant case, the applicable starting point for the statute of limitations is the "conclusion of direct review or the expiration of the time for seeking such review." See id.  The Supreme Court

denied Petitioner's petition for allowance of appeal on August 8, 2018. See Mable, 647 Pa. at

569. Respondents argue that Petitioner's conviction became final on that date. (Doc. No. 15 at

7.) Respondents, however, have not accounted for the ninety (90)-day period during which

Petitioner could have sought a writ of certiorari from the United States Supreme Court. See

Bacon v. Sommers, No. 3:18-cv-59, 2019 WL 1239429, at *2 (M.D. Pa. Mar. 18, 2019).

Petitioner's conviction, therefore, became final on November 6, 2018, when his time for seeking

such review expired, and he had until November 6, 2019 to file a timely § 2254 petition. The

Court received Petitioner's § 2254 petition on August 13, 2019. (Doc. No. 1.) Petitioner's

§ 2254 petition is, therefore, timely pursuant to § 2244(d)(1).

### B.   Exhaustion and Procedural Default

The Court must next determine whether Petitioner's grounds for relief presented in his

§ 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to

excuse Petitioner's procedural default of his claims. Respondents maintain further that Petitioner

failed to exhaust Grounds One, Two, and Four. (Doc. No. 15 at 5-6.) It appears to the Court that

Petitioner did not exhaust Ground Three, as well.

Absent unusual circumstances, a federal court should not entertain a petition for writ of

habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in

28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his

available state remedies if he had the right under the law of the state to raise, by any available

procedure, the question presented. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A federal

claim may be exhausted either by being raised on direct appeal or presented in post-conviction

PCRA proceedings. See id. at 845. In addition, a claim is exhausted when it has been "fairly

presented" to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971). To that end, the

federal habeas claim "must be the substantial equivalent of that presented to the state courts."

See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must do so "in a

manner that puts [the respondents] on notice that a federal claim is being asserted."  See

Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has instructed that a

claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order

to find material' that indicates the presence of a federal claim."  Collins v. Sec'y of Pa. Dep't of

Corr., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)).

Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available

state remedies.  See 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances the goals

of comity and federalism while reducing "piecemeal litigation."  See Duncan v. Walker, 533

U.S. 167, 180 (2001).

   "When a claim is not exhausted because it has not been 'fairly presented' to the state

courts, but state procedural rules bar the applicant from seeking further relief in state courts, the

exhaustion requirement is satisfied because there is an absence of available State corrective

process."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted

because of a state procedural bar are considered to be procedurally defaulted.  See Lines v.

Larkins, 208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the

procedural default doctrine.  See id.  The purpose of this rule is to prevent habeas petitioners

from avoiding the exhaustion doctrine by defaulting their claims in state court.  See Coleman v.

Thompson, 501 U.S. 722, 732 (1991).  In Cone v. Bell, 556 U.S. 449 (2009), the United States

Supreme Court explained:

> It is well established that federal courts will not review questions of federal law
> presented in a habeas petition when the state court's decision rests upon a state-law
> ground that is independent of the federal question and adequate to support the
> judgment.  In the context of federal habeas proceedings, the independent and

adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Id. at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" See Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007)). The requirements of independence and adequacy are distinct. See id. A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if "it was firmly established, readily ascertainable, and regularly followed at the time of the purported default." See Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a

9

"fundamental miscarriage of justice." See Coleman, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Schlup v. Delo, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. See id. In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" See id. at 225 (citing Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)). If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," the Court will excuse his default and review the merits of the claim presented. See id.

Respondents assert that Petitioner never presented Grounds One, Two, and Four to the state courts. Upon review of the record, the Court agrees with Respondents' contention. The Court concludes further that Petitioner never presented Ground Three to the state courts. Petitioner has already pursued a direct appeal of his conviction and sentence, and he did not file a PCRA petition. Petitioner, however, cannot return to state court to file a PCRA petition because the PCRA's statute of limitations has expired. See 42 Pa. Cons. Stat. § 9545(b) (noting that a PCRA petition must "be filed within one year of the date the judgment becomes final" and that "a judgment becomes final at the conclusion of direct review").[2] Thus, because these grounds were not raised in the state courts and Petitioner can no longer return to state court to present them, they are procedurally defaulted, as well.

Consequently, because Grounds One, Two, Three, and Four are procedurally defaulted, the Court can entertain the merits of these grounds only if Petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. Petitioner, however, advances no compelling argument to establish that cause for the default exists or that a fundamental miscarriage of justice will occur if this Court does not consider his claims. See Coleman, 501 U.S. at 750. Rather, Petitioner asserts that he did not raise these grounds for relief because of "abandonment and outright raci[st] practice." (Doc. No. 1 at 3.) He maintains that "all court appointed attorneys[] sold [him] out and work[ed] against [him]." (Id. at 9.) The Supreme Court has recognized that, in certain circumstances, counsel's ineffectiveness in failing to properly preserve claims for

---

[2] While § 9545 sets forth limited exceptions to this rule, none is applicable to Petitioner's claims. Petitioner does not make any allegations that the Government in any way interfered with his ability to file a PCRA petition or with his direct appeal, and he does not rely on a constitutional right newly recognized by the United States Supreme Court or the Supreme Court of Pennsylvania. See 42 Pa. Cons. Stat. § 9545(b)(1)(i), (iii). Petitioner also does not allege that he could not have discovered the basis of these claims through the exercise of due diligence. See id. § 9545(b)(1)(ii).

review in state court may suffice to constitute "cause" to excuse a procedural default. See

Carrier, 477 U.S. at 488-89. However, "a claim of ineffective assistance" must generally "be

presented to the state courts as an independent claim before it may be used to establish cause for

a procedural default." See id. at 489. Thus, to the extent Petitioner seeks to rely upon Ground

Four, his claim of ineffective assistance of counsel, to excuse his default of Grounds One, Two,

and Three, he must first demonstrate either cause and prejudice or a fundamental miscarriage of

justice to excuse his default of that claim. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

In Pennsylvania, prisoners are required to bring ineffective assistance of counsel claims

in a PCRA petition. See Richardson v. Superintendent Coal Twp. SCI, 905 F.3d 750, 760 (3d

Cir. 2018) (citing Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726, 737-38 (2002)). As noted

above, however, Petitioner never filed a PCRA petition in state court. Cause "under the cause

and prejudice test must be . . . something that cannot fairly be attributed to" the petitioner. See

Gonzalez v. Superintendent Graterford SCI, 655 F. App'x 96, 100 (3d Cir. 2016). In the instant

case, Petitioner chose not to file a PCRA petition and, therefore, cannot demonstrate cause and

prejudice to excuse his procedural default of Ground Four. Moreover, although Petitioner asserts

that he is actually innocent, he has failed to present any new evidence to establish that a

fundamental miscarriage of justice would occur if the Court did not consider the merits of his

claims. See Goldblum, 510 F.3d at 225. Thus, Petitioner cannot excuse his default of Ground

Four and, in turn, cannot excuse his default of Grounds One, Two, and Three. See Edwards, 529

U.S. at 453. Because Grounds One, Two, Three, and Four have been procedurally defaulted, the

Court is, therefore, precluded from addressing the merits of those grounds. See Price v. Garman,

No. 1:17-cv-1103, 2018 WL 3546558, at *5 (M.D. Pa. July 24, 2018) (citing Larue v. Harry, No.

3:16-cv-485, 2016 WL 2625024, at *2 (M.D. Pa. May 9, 2016)).

**C.     Merits**

Ground Five, the only remaining ground, has been adjudicated on its merits in state court

and, therefore, has been exhausted.  In Ground Five, Petitioner asserts that the evidence

presented at trial was insufficient to support his convictions for promoting prostitution and

conspiracy to promote prostitution.  (Doc. No. 1 at 9.)  As noted above, this Court cannot grant

habeas relief unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established [f]ederal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a decision
> that was based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

Id. § 2254(d).

The standard of review used by a federal court when addressing a claim regarding the

sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The credibility

of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences

from proven facts all fall within the exclusive province of the factfinder and, therefore, are

beyond the scope of federal habeas sufficiency review.  See id.  Accordingly, "the only question

under Jackson is whether that finding was so insupportable as to fall below the threshold of bare

rationality."  See Coleman v. Johnson, 566 U.S. 650, 656 (2012).

In the instant case, the Superior Court concluded that Petitioner's sufficiency claim was

meritless based on the reasons set forth by the trial court in its Rule 1925(a) opinion.  See Mable,

2018 WL 653777, at *2.  This Court, therefore, must "look through" the Superior Court's

decision to the last reasoned decision of the state courts, the trial court's Rule 1925(a) opinion.

13

See Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009); Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).  With respect to Petitioner's sufficiency claim, the trial court wrote:

> To be found guilty of Promoting Prostitution under subsection (b)(3), the Commonwealth had to prove beyond a reasonable doubt that [Petitioner] encouraged, induced, or otherwise intentionally caused another to become or remain a prostitute.  18 Pa. C.S.A. § 5902(b)(3).  Similarly, to be found guilty of Promoting Prostitution under subsection (b)(6), the Commonwealth had to prove beyond a reasonable doubt that [Petitioner] transported a person into or within the Commonwealth with the intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent.  § 5902(b)(6).

> The evidence presented at trial, viewed in the light most favorable to the Commonwealth, establishes the following:

> In June of 2014, [Petitioner] and Co-Defendant Klement contacted Ms. Kishbaugh, asking if she would like to make money as a prostitute in Monroe County.  Over the course of several conversations with [Petitioner] and Co-Defendant Klement, Ms. Kishbaugh was informed that the two men would be her pimps and that they would pick her up from Scranton and transport her to Monroe County.  Additionally, Ms. Kishbaugh understood that as part of this arrangement, [Petitioner] and Co-Defendant Klement would protect her in exchange for half of the money she made as a prostitute.  Ms. Kishbaugh agreed to this arrangement and Co-Defendant Klement picked Ms. Kishbaugh up from her home in Scranton on June 24, 2014.  On the way from Scranton to Monroe County, Co-Defendant Klement also picked up [Petitioner], and the group went to a trailer home.  While at this home, [Petitioner] and Co-Defendant Klement sexually assaulted Ms. Kishbaugh.  Co-Defendant Klement forced Ms. Kishbaugh to perform oral sex on him and [Petitioner] forced Ms. Kishbaugh to receive oral sex from him and to have vaginal sex with him.  These assaults were in response to Ms. Kishbaugh changing her mind about the arrangement, making [Petitioner] angry that he had put time and effort in to bringing Ms. Kishbaugh to Monroe County to make money as a prostitute.

> Through the night of the 24th and into the morning of the 25th, [Petitioner] and Co-Defendant Klement did not permit Ms. Kishbaugh to leave the trailer home, despite her continued insistence that she had changed her mind.  [Petitioner] and Co-Defendant Klement hit Ms. Kishbaugh and restricted access to her cell phone in attempts to make her stay in the home.  Finally, Trooper William Patton testified as a gang expert, presenting evidence that [Petitioner] and Co-Defendant Klement were members of a gang, the Black P-Stones, that participated in an activity known as "gorilla pimping," wherein young, impressionable girls would be lured into prostitution by gang members and not permitted to leave either by force, threat of force, or promise of drugs, while the gang members earned money, through the girls' prostitution, for the gang.

The above evidence, viewed in the light most favorable to the Commonwealth, establishes, beyond a reasonable doubt, that [Petitioner] committed both charges of Promoting Prostitution. [Petitioner's] knowledge of and involvement in transporting Ms. Kishbaugh to the trailer home where she was subsequently forced to stay and perform sexual acts is sufficient to support such a conviction and is not so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. See [Commonwealth v.]Cruz-Centeno, 668 A.2d [536,] 539 [Pa. Super. [Ct.] 1995)]. These convictions are further supported by the evidence of [Petitioner's] gang membership in that his actions in promoting Ms. Kishbaugh's prostitution were motivated by such membership, thereby also indicating his intent to engage in such promotion, his lack of mistake in doing so, and his knowledge that such promotion was occurring. We are satisfied that the evidence was sufficient to convict [Petitioner] of both counts of Promoting Prostitution.

We further find the evidence was sufficient to convict [Petitioner] of Conspiracy to commit Promoting Prostitution. "A conviction for criminal conspiracy is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy." Com[monwealth] v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. [Ct.] 2002) (citing 18 Pa. C.S.A. § 903). In this case, [Petitioner] was charged with Conspiracy, generally, but the jury found him guilty only of Conspiracy to commit Promoting Prostitution. Thus, the only agreement we need to consider would be an agreement between [Petitioner] and another person to commit the crime of Promoting Prostitution.

When presenting evidence to show a defendant made a criminal agreement with another, the Commonwealth will typically not have direct evidence of such an agreement, and thus, "[a] conspiracy is almost always proven through circumstantial evidence." Id. The Superior Court has established four factors for courts to consider when deciding whether the evidence establishes that a conspiratorial agreement was formed: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." Id. (quoting Com[monwealth] v. Olds, 469 A.2d 1072, 1075 (Pa. Super. [Ct.] 1983)). "The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." Id. Additionally, "[o]nce there is evidence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy." Id.

In the present case, the evidence presented showed "an association between alleged conspirators." Not only did co-defendant Klement pick up and drive [Petitioner] to the trailer home, but the two had gone to the same high school,

15

seemed to live in the same home, and were known to be members of the same gang. Furthermore, both [Petitioner] and co-defendant Klement had been in contact with Ms. Kishbaugh about the same plan to bring her to Monroe County for prostitution. The evidence also showed [Petitioner] had "knowledge of the commission of the crime." [Petitioner] was involved in the initial communications with Ms. Kishbaugh and explained his role as a pimp. Indeed, in his brief, [Petitioner] emphasizes that Ms. Kishbaugh was clear that her intentions upon arrival in Monroe County were to become a prostitute, and Ms. Kishbaugh candidly testified to the same at trial. Further, the evidence at trial clearly established, and [Petitioner] does not deny, his "presence at the scene of the crime." Lastly, the evidence showed [Petitioner's] "participation in the object of the conspiracy." By arranging for transportation, not allowing Ms. Kishbaugh to leave, and forcing her to perform sexual acts, with the ultimate goal that she become a prostitute, [Petitioner] participated in the conspiracy to promote Ms. Kishbaugh's prostitution.

We understand that [Petitioner] emphatically argues "mere presence at the scene of an incident involving purported criminal activity is insufficient to demonstrate an individual's guilt." While we agree with that statement generally, see Lambert, 795 A.2d at 1016, the evidence in [Petitioner's] case, as discussed above, shows much more than his "mere presence." The case [Petitioner] cites to support this argument, Com[monwealth] v. Mills, 478 A.2d 30 (Pa. Super. [Ct.] 1984), is readily distinguishable.

In Mills, the defendant was charged with conspiring with his co-defendant, William Gola, to sell methamphetamine to a Confidential Informant ("CI") and an undercover agent from the Bureau of Narcotics Investigation ("agent"). Mills, 478 A.2d at 31. When Mills arrived at Gola's apartment, the CI and agent were already there and had spoken with Gola about procuring methamphetamine from a man named "Karl." Id. When "Karl" could not be reached, Mills offered to sell the two men methamphetamine from the shipment he was to receive later that evening, but the offer was declined and the CI and agent returned to their car. Id. at 32. At the agent's request, the CI reentered Gola's apartment and asked him to come to the car. Id. When Gola came outside, Mills came with him and the four men proceeded to drive around looking for "Karl" and a quantity of methamphetamine. Id. No drugs or money were exchanged, however, Mills and Gola were both charged with Conspiracy approximately one month later. Id. at 32-32.

The Superior Court found that Mills could not be guilty of Conspiracy "because the Commonwealth's evidence, direct and circumstantial, failed to prove the existence of a conspiracy between [Mills] and Gola." Id. at 33 (emphasis added). The Superior Court noted that the evidence showed Mills was aware the CI and agent were seeking methamphetamine and that Mills was willing to independently sell this substance to them. Id. However, the Court could not conclude from the evidence before it that Mills and Gola had formed an agreement to sell the methamphetamine together or were working to accomplish that common goal. Id. The Court also noted that there was no evidence of prior dealings between

Mills and the CI, no statements from Mills or Goal that they were, or had ever, worked together, and no evidence that Mills would participate or profit from the transaction between Gola and the CI and agent. Id.

> [Petitioner's] case is distinguishable. While there may not have been direct evidence of statements indicating [Petitioner] and co-defendant Klement were working together to accomplish a common, criminal goal, the circumstantial evidence indicates that these two men had an agreement. [Petitioner] and co-defendant Klement were members of the same gang and engaged together in activity that correlated with the gang's methods of "gorilla pimping." Both Appellant and co-defendant Klement were in contact with Ms. Kishbaugh to settle details of the arrangement. Both men reassured Ms. Kishbaugh that they would protect her and expect a cut of her profits in return. Finally, both men accompanied Ms. Ki[s]hbaugh to the trailer home where she was subsequently assaulted and kept from leaving. In Mills, there was no evidence, direct or circumstantial, that showed any connection between Mills and Gola. Mills, 478 A.2d at 33. Where the Superior Court in Mills faced a record devoid of connection between co-defendants, we face a very different scenario here. Thus, Mills is distinguishable and [Petitioner's] argument in reliance thereon fails.

> [Petitioner] also alleges the Commonwealth cannot rely on his "purported gang affiliation" to establish the existence of an agreement sufficient to support a conviction for Conspiracy. However, this argument has no merit as the four factors in Lambert were supported by independent, non-gang related evidence, which we have discussed above, at length. See Lambert, 795 A.2d at 1016. Despite [Petitioner's] insistence, evidence of his gang affiliation was not the only evidence presented against him.

(Doc. No. 20-7 at 11-17 (internal citations to trial transcript and briefs omitted).

Upon consideration of the trial court's thorough discussion and the evidence presented at Petitioner's trial, as described supra, the Court concludes that the state court's conclusion was a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law. See Price, 2018 WL 3546558, at *7. Consequently, Ground Five of Petitioner's § 2254 petition does not warrant habeas relief.[3]

---

[3] In his § 2254 petition, Petitioner appears to suggest that the victim fabricated her testimony and that she consented to engage in prostitution. (Doc. No. 1 at 4, 7.) This argument, however, appears to be a weight of the evidence claim regarding the victim's credibility. A court

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding initiated pursuant to 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the case at bar, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, the Court will not issue a COA in this case.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.

---

reviewing a § 2254 petition has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." See Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Thus, to the extent Petitioner is asserting a weight of the evidence claim with respect to this testimony, such a claim is not cognizable under § 2254.